Good morning, counsel. State your name for the record and you can proceed. Good morning, Your Honor. For the record, my name is Palmer Huvestal. I'm an attorney from Helena, Montana, and I am appearing on behalf of Karina Grychikova. The sole issue that I'd like to address this morning is the due process issue that's been raised in the briefs and the Ramirez Alejandre remand or order that was issued by this Court. I think as an initial matter, though, it's important to look at the chronology of the case. In July of 1998, the immigration judge issued his decision and order denying Ms. Grychikova's request for an asylum application. On June 26, 2002, four years later, almost four years later, Karina Grychikova makes a motion to reopen the case, and the motion to reopen is set forth in the brief. Among the important aspects of the motion to reopen are the facts that she has married an American citizen, she also has a child who's also an American citizen. Attached to that motion to reopen is also an affidavit of her husband, Kevin Yeager, which states the difficulties, the financial hardships, the health hardships, that sort of thing, the extreme hardship, in essence, that would occur if Ms. Grychikova were to return to Uzbekistan. In that motion to reopen, she asks the Court to, the Board of Immigration Appeals, to reopen the case, take this additional evidence through, or remand it back to the immigration judge to take the additional evidence, because facts and things have changed in the meantime. She also specifically alleges severe hardship. On April 27, 2003, the Board of Immigration Appeals denies the motion to reopen. And then this Court, on July 25, 2003, issues its order to remand the case to the Board of Immigration Appeals pursuant to the holding of Ramirez-Alejandre. Which raises the question of whether her failure to petition for review of the denial of the motion to reopen bars or limits her ability to challenge the BIA's denial of relief on remand, as the October 24, 2003, order merely reaffirmed the BIA's April 22, 2003, denial, right? That's exactly right. But I think critical to this remand were the facts of the Alexander, or the Ramirez-Alejandre case. And that case specifically dealt with extreme hardship. And I think it was Judge Thomas who talked about factors under immigration law that the Board is supposed to look at when it decides issues of extreme hardship. And therefore, at least it's our position, that subsumed within that remand, the Board of Immigration Appeals was required to look at the extreme hardship factors that were set forth in Karina Gerchakova's motion to reopen. Well, it does have a – it has an unusual procedural history. But it also, too – I mean, we still have to look at what we can do in those circumstances. But it's kind of similar to the extent that, you know, say you take 20 years to execute someone, the person that you execute isn't the same person that you convicted. In the meantime, they've, you know, they've had an opportunity to write a book, do a lot of good things, and they're not the same person that was convicted of the crime. Well, she's not obviously the same – she's not in the same situation that she was in when she was started. Right. So, you know, I think – did – was any evidence submitted to the BIA on remand that had not been previously submitted to the BIA on your motion to reopen? Not on remand, Your Honor. It – from our perspective, at least, it was based upon the motion. In other words, they had summarily denied the motion to reopen without an examination of the facts, without an examination of the evidence that was set forth in the motion to reopen. It was completely blank. Maybe what you – you know, I mean, you certainly paint a very sympathetic picture, all right? But not to say that if we want sympathy, we only look it up in the dictionary. But sympathy aside, you know, what – what are your legal arguments to get her released here? My legal arguments, Your Honor – I'm getting to that right now. In Ramirez-Alejandro, the case – or the court said that it was a due process violation for the Board of Immigration Appeals not to consider that additional evidence. We submitted additional evidence, which would have been more fully developed at a hearing. The board denied it. There was not one mention, not one word about the issue of extreme hardship. It just simply wasn't considered. And it's our position that that's a violation of the court's order, or at least the court's order with respect to Ramirez-Alejandro was not followed. The Board of Immigration Appeals should have examined the new evidence that we would have – or that was in the motion to reopen that would have been developed before the immigration judge. And all of that relates to extreme hardship, which goes to the very heart of the Ramirez-Alejandro case. Now, I suspect that the government is going to argue, well, that was kind of in a roundabout way addressed in the J-1 issue. In other words, the foreign exchange student issue. I think as a matter of law, she is required to go to – back to Uzbekistan for a period of two years before she can come back and then qualify for – So is that basically – if you're denied relief here, is that basically the only way she can come back? She has to go back there for two years and then reapply. That's exactly right. And important to that analysis is our footnote in our brief that a J-1 waiver has been submitted. We submitted it once in 2000. We submitted it again in 2002. And as we sit here today, that J-1 waiver is still pending. And if it's granted, we have received first – and it's not part of the record, but we received first – the government of Uzbekistan has not objected to her not going back to Uzbekistan. And the J-1 waiver is based on extreme hardship, basically the same facts that are before this Court and that should have been before the Board of Immigration Appeals that they refused to examine. So there is a possibility, and I think it's a strong possibility, that Ms. But we can't really worry about that here. We have to limit ourselves to this, correct? I mean, we have to stick to the record here. We have to stick to the record, but it is part of the record. And the one that we've submitted is located in Excerpt of Record 76. I think there's another citation as well in the certified record. So those are in the Board's records. Those are a part of this record. The fact that it hasn't been granted yet is, I think, an issue that the Board of Immigration Appeals should have examined when deciding whether or not to grant or deny her motion to reopen. And it just flat wasn't talked about. Nothing was talked about with respect to extreme hardship. I'd like to reserve the remaining two minutes that I have. Thank you. Morning, counsel. Good morning, Your Honors. My name is Isaac Campbell, and I represent the government in this matter. Your Honors, because Petitioner's counsel has focused this, the sole issue on the due process claim, focused on that, and I guess then counsel is abandoning the other claims that are there. The, in his argument, he talked about the fact that there was somehow some due process violation. We would note, first of all, that Petitioner did not seek review of this, the denial of the motion to reopen. And it would be the government's position that it would not be properly before this court, quite frankly. But secondly, even looking at the merits of this case, one of the things that Petitioner relies most heavily upon is the Ramirez-Alejandro case. And in that case, the Board of Immigration Appeals had stated that it would never consider new evidence on appeal. And this court said that that might not be proper. I mean, that that would not necessarily be proper. In this case, the additional evidence that Ramirez-Alejandro provided, the court did somehow suggest that it would or would not afford the Petitioner in that case the relief that he sought, but simply said that it should be considered. And clearly that has been done here. Now, Petitioner talks about the fact that, or Petitioner's counsel talks about the fact that she was denied due process. The government would note, first of all, that in addition to the opportunity to present a case for the immigration judge, she's had her case reviewed by the board on three separate occasions. The first on appeal from the immigration judge's decision. The second time on the motion to reopen in which she had the opportunity to submit additional evidence. And a third opportunity after the case was remanded. Now, the court has made clear, well, take a step back, even when addressing the motion to reopen, I think it's important, first of all, to look at what the motion to reopen actually contained. In the motion to reopen, the Petitioner brought up three issues. The Petitioner talked about the adjustment of status and said that she was married with a child, what Petitioner's counsel is calling the J-1 issue. The hardship issue that Petitioner has talked about was barely referenced. And what it talked about is the fact, if you review the motion to reopen, it talked about the fact that Petitioner's parents no longer live in Uzbekistan and she would not have a place to live. And it also talked about changed circumstances, saying that in post-9-11 there were serious issues and that she might suffer. Now, that was the crux of the motion to reopen. And now those issues are being abandoned and the way the motion to reopen is being characterized is that it was solely or even primarily one about hardship and that simply isn't the case when, upon review of the motion to reopen. But even if that is the case, the Board did address the issues that Petitioner chose to argue and addressed each of these issues. In the Ramirez-Alejandro remand, what this Court said was that evidence that it is not proper simply to say that additional evidence won't be considered. The Board made clear that it did consider that evidence and, unfortunately, Petitioner doesn't like the results, but the information was considered. The Board gave, in denying the motion to reopen, it gave specific reasons for its decision in its rationale, and it fully comported with the Ramirez-Alejandro standard. And so it is the government's position that the petition for review should be denied. There are no other questions, actually. Dr. Paradis, do you have any other questions? Thank you, Counsel. I'll be brief but cogent, nonetheless. Your Honor, with respect to the motion to reopen, I'd point the Court to Excerpt of Record 142 to 149. And occurring at page 145, lines 17 through 20, contains the following language. To refuse to reopen these proceedings and deport Karina, comma, would cause a severe hardship on Karina, as well as her husband and daughter, who are both United States citizens. The hardship language was specifically brought up in the motion to reopen. There is the affidavit of Karina Gertchikova that's set forth, or the affidavit of Kevin Yeager that's also set forth there. And, most importantly, on page 147, identified as Exhibit M, at lines 17 through 19, is the application of waiver of foreign residency requirement. The issue of hardship was never addressed by the Board of Immigration Appeals. It falls squarely within the holding of Ramirez-Alejandro. Due process was not given to her, and this Court should reverse. Thank you. Thank you. The matter of Karina Gertchikova v. John Ashcroft will stand submitted at this time. We will call the final case today of Jaime Perez Enriquez v. John Ashcroft.
judges: Hall, Callahan, Bertelsman